**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NORTH PENN WATER AUTHORITY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BAE SYSTEMS, et al. | : | No.    04-5030 |
| | : | |

**Memorandum**

**Baylson, J.**                                                          **May 25, 2005**

**I.     Introduction**

On September 20, 2004, Plaintiff North Penn Water Authority ("NPWA") filed a

Complaint (the "State Complaint") in the Court of Common Pleas of Montgomery County,

Pennsylvania, against Defendants BAE Systems Aerospace Electronics, Inc. ("BAE"), Fichtel &

Sachs Industries, Inc. ("Fichtel"), Stabilus, Gas Spring Corporation ("Gas Spring"), County Line

Limited Partnership ("County Line"), Honeywell, and Baron-Blakeslee, Inc. ("Baron-

Blakeslee").  The State Complaint seeks to recover: (1) response costs incurred in connection

with the contamination of one of NPWA's production wells ("Well NP-21"); (2) an order

requiring Defendants to provide an appropriate treatment system for Well NP-21; and (3) a

declaratory judgment regarding Defendants' liability for future response costs involving Well

NP-21.

Also on September 20, 2004, Plaintiff filed a complaint in this Court (the "Federal

Complaint"), which commenced Civil Action No. 2:04-CV-04446-MMB (the "Federal Action").

The Federal Complaint contains the state law claims presented in the State Complaint, as well as

two additional counts under the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA") and the Resource Conservation and Recovery Act ("RCRA").

On October 25, 2004, Defendants BAE, Fichtel, Stabilus, County Line, and Honeywell filed a notice of removal to this Court regarding the State Complaint, arguing that federal court jurisdiction over this action was appropriate "[b]ecause NPWA requests relief inconsistent with the [Environmental Protection Agency ("EPA")]'s chosen remedy, NPWA's request for [a treatment system of NP-21] in the State Court Complaint constitutes a direct challenge to an action taken by EPA pursuant to the powers delegated to it under CERCLA and, as such, raises a federal question." (Notice of Removal, ¶ 15, p. 4).

Presently before the Court are Plaintiff's Motion to Remand, filed on November 24, 2005, and Defendants' Motion to Dismiss for lack of subject matter jurisdiction, or in the alternative, to consolidate with the Federal Action, filed on November 18, 2004.  In the Motion to Remand, NPWA argues that (1) the removal was procedurally defective because Defendant Baron-Blakeslee did not join in the Notice of Removal, and that (2) remand is required because the State Complaint does not present a removable question of federal law.

## II.    The State Complaint

### A.    Factual Allegations

The State Complaint sets forth the following factual allegations relevant to the motions before the Court.  NPWA is a municipal corporation which provides water service to customers in ten member municipalities and portions of several Townships in Montgomery and Bucks Counties in Pennsylvania. (State Complaint, ¶¶2-4).

Defendant BAE Systems, a Pennsylvania corporation, or its predecessors-in-interest owned and/or operated a facility in Montgomery Township ("BAE Facility"), where activities

involving the generation, use, sale, storage, handling, transportation, treatment, recycling, and/or disposal of hazardous wastes and/or hazardous substances have taken place. These hazardous wastes are "hazardous wastes" within the meaning of § 1003 of the RCRA, 42 U.S.C. § 9603, and § 103 of the Pennsylvania Solid Waste Management Act, 35 P.S. § 6018.103. Such hazardous substances are "hazardous substances" within the meaning of § 101(14) of CERCLA, 42 U.S.C. § 9601(14) and § 103 of the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. § 6020.103. (Id., ¶¶5-15).

Defendant Gas Spring is a fictitious name under which Defendant Fichtel & Sachs conducts business. Defendant Stabilus is also a fictitious name owned by Defendant Fichtel & Sachs. Defendants Fichtel & Sachs, Gas Spring, and Stabilus owned and/or operated a facility in Montgomery County ("Stabilus Facility"). Defendant County Line also owned and/or operated the Stabilus Facility, where activities involving the generation, use, sale, storage, handling transportation, treatment, recycling, and/or disposal of hazardous wastes and/or hazardous substances have taken place. These hazardous wastes are "hazardous wastes" within the meaning of § 1003 of the RCRA, 42 U.S.C. § 9603, and § 103 of the Pennsylvania Solid Waste Management Act, 35 P.S. § 6018.103. Such hazardous substances are "hazardous substances" within the meaning of § 101(14) of CERCLA, 42 U.S.C. § 9601(14) and § 103 of the HSCA, 35 P.S. § 6020.103. (Id., ¶¶16-21, 27-32).

Defendant Honeywell is Delaware corporation. (Id., ¶22).

Defendant Baron-Blakeslee is a Delaware corporation that was a division of Allied Chemical Company. Defendant Honeywell is the corporate successor to Allied Chemical, and is

a successor-in-interest to Baron-Blakeslee. (Id., ¶¶23-26).

In August 1979, NPWA discovered that eight of its production wells were contaminated with volatile organic compounds ("VOCs"), including trichloroethene or trichloroethylene ("TCE"). TCE is a chlorinated solvent which was used extensively in metal cleaning and degreasing. This discovery led to the initiation of an investigation by the NPWA to identify potential sources of the VOC contamination, in concert with the Pennsylvania Department of Environmental Resources ("PADER"), which is now the Pennsylvania Department of Environmental Protection ("PADEP"). (Id., ¶¶53-57).

In the 1980s, the EPA initiated an investigation of groundwater contamination throughout the entire North Penn area in Montgomery and Bucks Counties. The EPA identified twelve areas of VOC contamination, one of which has been designated as North Penn Area 5. Well NP-21, the subject of this litigation, is located in North Penn Area 5. (Id., ¶¶58-61).

The State Complaint describes the EPA's investigations into the contamination on BAE's and Stabilus' property, and describes the federal government's involvement in North Penn Area 5 and the EPA's proposed plan of remediation. In 1986, the EPA directed its consultant, NUS Corporation, to perform a high priority site discovery of the groundwater contamination in the North Penn area. The site was scored using the Hazard Ranking System ("HRS") of the National Contingency Plan ("NCP"), a regulation adopted under CERCLA which sets forth the guidelines and procedures for responding to releases or potential releases of hazardous substances, pollutants, or contaminants. On the basis of the score, the site was proposed for inclusion on the National Priorities List ("NPL") – the EPA's list of the hazardous waste sites that are priorities

4

for long-term evaluation and remediation. In 1989, North Penn Area 5 Superfund Site was listed on the NPL, due to the detection of VOCs in Well NP-21. (Id., ¶¶63-123).

Subsequent to the site's listing on the NPL, in July 1991, the EPA decided to conduct a remedial investigation/feasibility study ("RI/FS") on the site. In March 2002, the EPA issued its draft RI report, which was supplemented in July 2002. In May 2002, the EPA issued a draft Feasibility Report ("FS"), which was also supplemented in July 2002. In July 2002, the EPA issued a draft Risk Assessment Report, which concluded that the distribution of contaminants in the North Penn Area 5 indicated two separate TCE groundwater plumes, one in the vicinity of the BAE Facility and one in the vicinity of the Stabilus Facility, and that the overall distribution of TCE in the groundwater in 1998 was similar to the overall distribution in 1980. The Report concluded that both the BAE and Stabilus plumes represented a potential unacceptable risk that triggered the need for remedial action. (Id., ¶¶124-140).

In July 2002, the EPA issued a proposed plan ("2002 Proposed Plan"), which summarizes the information from the RI/FS and discussed the technologies being considered for cleanup of the site. The 2002 Proposed Plan for the BAE plume involves the installation of three new wells in the contaminated groundwater aquifer below the BAE property and extraction of groundwater to prevent continued migration of contamination to Well NP-21 and toward Neshaminy Creek. The 2002 Proposed Plan for the Stabilus plume similarly involves the installation of four new wells in the contaminated groundwater aquifer below the Stabilus property for extraction, to prevent continued migration of contamination. (Id., ¶¶141-146).

During a public meeting in August 2002 and in written comments provided to the EPA,

5

NPWA set forth its position that the EPA's 2002 Proposed Plan is incomplete and inconsistent with the National Contingency Plan, because it does not include installation and operation of a treatment system on Well NP-21.  The EPA responded to NPWA in a June 2004 Record of Decision ("ROD").  A ROD documents the cleanup remedy for a contaminated site, or part thereof, called an Operable Unit ("OU").  The ROD issued in June 2004 addresses "OU number 1," which involves the BAE Plume.  A forthcoming ROD will address "OU number 2" and the Stabilus Plume.  (Id., ¶¶147-151).

The State Complaint details NPWA's critique of the EPA's plan for the site.   Whereas the EPA estimates that under ideal circumstances, its plan will take approximately ten years to render the groundwater acceptable for use as a source of public water supply, NPWA alleges that appropriate treatment technology is readily available that would allow Well NP-21 to be put back into service for customers immediately, but that Defendants have refused to install and operate such a system.   The State Complaint describes the EPA's response to NPWA's comments, and the NPWA's responses thereto, as well as the Pennsylvania Department of Environmental Protection's comments on the EPA's ROD for OU number 1 and on the EPA's response to the NWPA's comments.  (Id., ¶¶152-170).

The State Complaint's factual allegations conclude by describing NPWA's inability to use Well NP-21 because of the TCE contamination.  Between 1979 and 1995, the contamination of the well forced NPWA to reduce the pumping rate and shut down the well for periods of time. The well has been out of service since 1996 and remains out of service.  Meanwhile, NPWA has incurred various response costs because of the contamination, including the costs to investigate, assess, monitor and provide an alternative water source.  NPWA asserts that Well NP-21 should

be put back into service with appropriate treatment to ensure the water's potability, with the use of air strippers or other remedial technologies to remove VOCs.  (Id., ¶¶171-176).

**B.     Causes of Action**

The causes of action pleaded in the State Complaint are as follows: In Count I, NPWA demands judgment against Defendants under the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. § 6020.103, for the recovery of all response costs incurred by NPWA and all natural resource damages associated with the contamination of Well NP-21, and a declaratory judgment that Defendants are liable for all future response costs and natural resource damages to be incurred, together with the costs of litigation and interest.

In Count II, NWPA demands judgment against Defendants under the HSCA to abate the contamination and provide an appropriate and acceptable treatment system on Well NP-21, including the operation and maintenance of such system, together with costs of litigation and interest.

In Count III, NPWA demands judgment against Defendants for costs to compel compliance with the Pennsylvania Storage Tank Act and Spill Prevention Act, 35 P.S. § 6021.101, et seq. ("Storage Tank Act"), costs for corrective action, recovery of response costs, and an order directing Defendants to abate the contamination and provide an acceptable and appropriate treatment system on Well NP-21, including the operation and maintenance of such system, diminution of property value, and litigation costs.

In Count IV, NPWA makes similar claims for judgment and injunction against Defendants, ordering them to abate the violation of the Clean Streams Law, 35 P.S. § 691.601(c),

and to provide an acceptable and appropriate treatment system on Well NP-21.

Count V- XIII set forth state common law claims of Negligence, Negligence Per Se, Nuisance, Continuing Nuisance, Public Nuisance, Nuisance Per Se, Trespass, Continuing Trespass, and Strict Liability.  Each of these counts demand judgment in an amount in excess of $150,000, plus punitive damages, costs of litigation, interest, and any other relief the Court deems just and proper.

### III.   Factual Background of Motion to Remand

In it Motion to Remand, NWPA alleges that on or about October 18, 2004, Defendants BAE, Fichtel, Stabilus, Gas Spring, County Line, and Honeywell agreed to accept service of process of the State Complaint.  Defendant Baron-Blakeslee was not a party to the agreement. On October 19, 2004, NWPA filed an affidavit of service in the state court indicating that a true and correct copy of the State Complaint had been mailed to Defendant Baron-Blakeslee at its corporate headquarters in Cicero, Illinois, as evidenced by a signed certified mail receipt dated October 5, 2004.

On October 25, 2004, the Notice of Removal was filed by Defendants BAE, Fichtel, Stabilus, Gas Spring, County Line, and Honeywell.  Pursuant to 29 U.S.C. § 1447(c), NWPA filed this Motion to Remand within thirty days of the filing of the Notice of Removal.

### IV.   Legal Standard

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in a state court if the federal court would have had original jurisdiction over the action.  "The defendants bear the burden of establishing removal jurisdiction and compliance with all pertinent procedural

requirements." <u>Winnick v. Pratt</u>, 2003 WL 21204467 *2 (E.D. Pa. 2003)(citing <u>Boyer v. Snap-On Tools Corp.</u>, 913 F.2d 108, 111 (3d Cir. 1990)).  The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand."  <u>Boyer</u>, 913 F.2d at 111 (quoting <u>Steel Valley Authority v. Union Switch and Signal Div.</u>, 809 F.2d 1006, 1010 (3d Cir. 1987)).

28 U.S.C. § 1447(c) states:

> A motion to remand the case on the basis of any defect in the removal procedure must be within 30 days after filing of the notice of removal under section 1146(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Remand to the state court is therefore appropriate for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process."  <u>PAS v. Travelers Ins. Co.</u>, 7 F.3d 329, 352 (3d. Cir. 1993).  Here, NPWA argues both that (1) removal was procedurally defective because Defendant Baron-Blakeslee did not join in the Notice of Removal, and that (2) the district court lacks subject matter jurisdiction because the State Complaint does not present a question of federal law.

V.    **<u>Discussion</u>**

   A.    **<u>Alleged Procedural Defect in Removal – Failure of Defendant Baron-Blakeslee to Join in the Notice of Removal Does Not Require Remand</u>**

NPWA argues that the failure of Baron-Blakeslee and Gas Spring to join the Notice of Removal violates the "rule of unanimity," a procedural requirement that "when there is more than one defendant, all must join in the removal petition."  <u>Lewis v. Rego Co.</u>, 757 F.2d 66, 68 (3d. Cir. 1985).  The parties do not dispute that the Notice of Removal is signed only by counsel

for Defendants BAE, Fichtel, Stabilus, County Line, and Honeywell.

As to Defendant Gas Spring, Defendant Fichtel & Sachs Industries, Inc. signed the Notice of Removal as "Defendants Fichtel & Sachs Industries, Inc., individually and trading as Gas Spring Company and Stabilus and Gas Spring Corporation." The State Complaint states that Gas Spring is a fictitious corporate name utilized by Fichtel & Sachs, and therefore the signature of counsel for Fichtel & Sachs sufficiently serves to join Gas Spring in the Notice of Removal.

As to Defendant Baron-Blakeslee, Defendants contend that the failure of Baron-Blakeslee to join in the Notice of Removal falls within an exception to the rule of unanimity for nominal defendants. The Third Circuit has stated that "[t]he rule of unanimity may be disregarded where: (1) a non-joining defendant is an unknown or nominal party; or (2) where a defendant has been fraudulently joined." Balazik v. County of Dauphin, 44 F.3d 209, 213 n.4 (3d Cir. 1995). Therefore, "[m]erely nominal parties may be disregarded for removal purposes and need not join the notice of removal or otherwise consent to removal." Winnick, 2003 WL 21204467 at *2 (citing Ogletree v. Barnes, 851 F. Supp. 184, 186 (E.D. Pa. 1994)).

Defendants argue that Baron-Blakeslee is a nominal defendant, because: (1) it has not existed as a separate corporate entity since 1987, when it merged into Allied-Signal Corporation; (2) as Plaintiff's State Complaint alleges, the successor-in-interest to Baron-Blakeslee is Defendant Honeywell; and (3) there is no dispute that Defendant Honeywell joined in the Notice of Removal. The Court agrees. As a currently non-existent corporate entity whose interests are represented by Honeywell, Defendant Baron-Blakeslee is a nominal defendant and therefore it

was unnecessary for Baron-Blakeslee to join in the Notice of Removal.[1]

In <u>Miller v. Principal Life Insurance Co.</u>, 189 F. Supp. 2d 254, 257 (E.D. Pa. 2002), as here, the defendants failed to identify another defendant as a nominal party in the notice of removal.  The court followed the lead of the Supreme Court in recognizing a right, in certain circumstances, to amend a removal petition to include relevant information previously omitted, and permitted the defendants to supplement the original notice of removal after the expiration of the prescribed thirty-day period, to identify the other defendant as a nominal party.  <u>Id.</u> at 257-58 (citing <u>Willingham v. Morgan</u>, 395 U.S. 402, 408 (1969)).  As Defendant Baron-Blakeslee is no longer in existence as a corporate entity and Defendant Honeywell, the successor-in-interest, joined in the removal, the Court is satisfied by the record that all Defendants who are real parties in interest have properly consented to removal and will not require the Notice of Removal to be amended.[2]

Thus, as Baron-Blakeslee is a nominal party in the action, its failure to join in the Notice of Removal does not constitute a violation of the rule of unanimity and does not require remand

---

[1]Plaintiff contests the characterization of Baron-Blakeslee as a nominal defendant by noting that Baron-Blakeslee "was properly served in this matter on October 5, 2004, at its corporate headquarters in Cicero, Illinois." (Plaintiff's Reply Brief, p. 4-5).  In an effort to clarify this matter, Defendant Honeywell has presented the Court with the affidavit of James P. Cahill, an ex-employee of Baron-Blakeslee, now employed by OMI to do consulting work for Honeywell, who collected the notice of certified mail from the Cicero address that was addressed to Baron-Blakeslee.  Cahill's affidavit states that, although he signed for the mail addressed to Baron-Blakeslee, he "did not, and could not, intend to imply or acknowledge that any entity called [Baron-Blakeslee] exists at [the Cicero address]."  According to the affidavit, the Cicero address used to house a Baron-Blakeslee facility engaged in machinery manufacturing and solvent distribution, but has been closed since the early 1990s.

[2]However, Defendants may nonetheless amend the Notice of Removal within ten days, if they wish to do so.

to the state court.  The Court must therefore turn to the question of whether the State Complaint presents a federal question.

### B.      The State Complaint Presents a Federal Question

_____NPWA argues that its well-pleaded complaint does not present a federal question and thus remand is required because this Court does not have original subject matter jurisdiction over the state law claims.  Defendants argue that, although the State Complaint purports to assert only state law claims, NPWA has artfully pleaded so as to present, under the guise of state law, a direct challenge to the federal government's cleanup remedy under CERCLA.  Defendants also argue that because NPWA's State Complaint arises from the same facts and asserts the same injury to NPWA as the Federal Complaint, judicial economy, the risk of inconsistent judgments, and the burden on the parties all weigh in favor of resolving this conflict in a single forum.

### i.      Legal Standard

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Thibodeau v. Comcast Corp., 2004 WL 2367828 *3 (E.D. Pa. 2004)(citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).  Here, the face of Plaintiff's State Complaint presents only state law claims.

"However, a well-established corollary to the well-pleaded complaint rule is the 'artful pleading doctrine,' under which 'a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim.'"

12

Id. (quoting Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 311 n.5 (3d Cir. 1994)).

The artful pleading doctrine permits removal if "(1) federal law has completely preempted the

state law that serves as the basis for the plaintiff's complaint, or (2) a federal question, not

pleaded in the plaintiff's complaint, is nonetheless both intrinsic and central to the plaintiff's

cause of action."  Id. (quoting Guckin v. Nagle, 259 F. Supp. 2d 406, 410 (E.D. Pa. 2003)).  The

Supreme Court has made it clear, however, that the potential presence of a "defense that raises a

federal question is inadequate to confer federal question jurisdiction."  Merrell Dow Pharm., Inc.

v. Thompson, 478 U.S. 804, 808 (1986).

**ii.**     **Discussion**

 CERCLA §113(b) confers upon federal district courts "exclusive original jurisdiction

over all controversies arising under [CERCLA]."  42 U.S.C. §9613(b).  §113(h), however,

specifies that "[n]o Federal court shall have jurisdiction under Federal law other than [diversity

jurisdiction] or under State law which is applicable or relevant and appropriate under section

9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial

actions," except in certain specified situations, and subsection (4) of §113(h) specifically

postpones federal court jurisdiction in citizen suits "alleging that the removal or remedial action

taken . . . was in violation of any requirement of this chapter."  42 U.S.C. §9613(h)(4).  Such

suits "may not be brought with regard to a removal where a remedial action is to be undertaken at

the site."  Id.

Congress has also made clear that CERCLA does not completely preempt the field of

environmental regulation, expressly declaring that "[n]othing in this chapter shall be construed or

interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances."  42 U.S.C. §9614(a).

In interpreting these provisions of CERCLA to support the argument that Plaintiff's State Complaint presents a federal question, Defendants rely on two cases decided by the Ninth Circuit, ARCO Environmental Remediation, L.L.C. v. Dept. of Health & Environmental Quality of the State of Montana, 213 F.3d 1108, 1115 (9th Cir. 2000)("ARCO"), and Fort Ord Toxics Project, Inc. v. California Envtl. Protection Agency, 189 F.3d 828, 832 (9th Cir. 1999)("Fort Ord"), and a recent decision by the District Court for the Eastern District of California, Lehman Bros. Inc. v. City of Lodi, 333 F. Supp. 2d 895, 2004 WL 1920864 (E.D.Cal. 2004).

In Fort Ord, the Ninth Circuit noted that "Congress passed §113(h) in order to 'protect[] the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort.'"  Fort Ord, 189 F.3d at 831 (quoting McClellan Ecological Seepage Situation v. Perry, 47 F.3d 325, 329 (9th Cir. 1995)("MESS")).  The court found that the language in §113(h) regarding "State law which is applicable or relevant and appropriate" was intended to preclude lawsuits that are "directly related to the goals of the cleanup itself." Id. at 831 (quoting MESS at 330).  So, although "Congress did not want §113(h) to serve as a shield against litigation that is unrelated to disputes over environmental standards," the Ninth Circuit has concluded that §113(h) "amounts to a blunt withdrawal of jurisdiction from any challenges to a CERCLA cleanup."  Id. at 831 (quoting MESS, 47 F.3d at 328)(internal quotations omitted).  As an example of a suit that would not implicate §113(h) because it would not be sufficiently related to the goals of a CERCLA cleanup, the Ninth Circuit suggested the example of an action brought

14

to enforce minimum wage requirements.  Id.[3]

In addressing the question of whether the plaintiffs' suit should have been remanded to state court on the grounds that §113(h) precludes only <u>federal</u> court jurisdiction, the Ninth Circuit found that "Congress' purpose could be thwarted just as easily by allowing state courts to issue injunctions halting CERCLA cleanups," and thus concluded that "Congress only removed *federal* court jurisdiction from 'challenges' to CERCLA cleanups because only federal courts shall have jurisdiction to adjudicate a 'challenge' to a CERCLA cleanup in the first place." <u>Id.</u> at 832.  In sum, the Ninth Circuit concluded that, because "Congress enacted §113(h) in order to promote the swift execution of CERCLA cleanups," Congressional intent "is best effectuated by reading §113(b)'s exclusive jurisdiction provision to cover any 'challenge' to a CERCLA cleanup.  Thus, §113(h), by postponing the jurisdiction of federal courts, postpones jurisdiction over CERCLA challenges from the only courts that have jurisdiction to hear such challenges." <u>Id.</u> at 832.

In <u>ARCO</u>, the Ninth Circuit reiterated that "CERCLA does not completely occupy the field of environmental regulation," <u>ARCO</u>, 213 F.3d at 1114, but proceeded to reaffirm <u>Fort Ord</u>'s interpretation of §113(b) and §113(h) as creating, and postponing until remediation is complete, federal court jurisdiction over all "challenges" to CERCLA cleanups.  <u>ARCO</u>, 213 F.3d at 1115.

> Thus, ARCO's claims are necessarily federal claims under §113(b) only if they
> constitute a challenge to a CERCLA cleanup.  An action constitutes a challenge to
> a CERCLA cleanup if it is related to the goals of the cleanup.  We have found

_____

[3]In <u>Fort Ord</u> itself, the court did not apply §113(h) because it determined that §113(h) does not apply to remedial actions at federal facilities.  <u>Id.</u> at 834.

> actions to challenge CERCLA cleanups where the plaintiff seeks to dictate specific remedial actions, to postpone the cleanup, to impose additional reporting requirements on the cleanup, or to terminate the RI/FS and alter the method and order of cleanup.  However, we have also recognized that Congress did not want §113(h) to serve as a shield against litigation that is unrelated to disputes over environmental standards.

Id. at 1115 (internal citations omitted).  In ARCO, the court concluded that the action before the court did not constitute a "challenge" to a CERCLA cleanup because the relief sought by ARCO "does not alter cleanup requirements or environmental standards.  Nor does it terminate or delay the [] cleanup."  Id.  Instead, the relief sought in ARCO "involves only the public's right of access to information about that cleanup."  Id.  Therefore, the court concluded that the suit was not a controversy arising under CERCLA pursuant to §113(b).  Id.

    In Lehman Bros., Judge Damrell of the Eastern District of California found that some of the state law claims were "necessarily federal in character" because the investment contract at issue was part of an "ill-fated strategy to reorder CERCLA priorities" that "launched the four year odyssey of the Lodi site litigation [which] has caused significant delay in remediation as well as a diversion of substantial resources from cleanup."  333 F.Supp.2d at 906.  The court concluded that "[s]uch purposeful conduct represents a radical challenge to CERCLA under Section 113(b)" which "compels this court to exercise jurisdiction."  Id. (citing ARCO, 213 F.3d at 1115).

    Defendants must and do concede that CERCLA has not preempted all state law on environmental matters.  The Third Circuit has repeatedly affirmed "that in enacting CERCLA Congress has not explicitly preempted all state law on environmental subject matter, nor has Congress enacted such a comprehensive scheme of regulation as to provide no room for

16

supplementation by the states." Witco Corp. v. Beekhuis, 38 F.3d 682, 687 (3d Cir. 1994)(citing Manor Care, Inc. v. Yaskin, 950 F.2d 122, 125-26 (3d Cir. 1991)). Defendants contend instead that, as in Lehman Bros., NPWA's state law claims constitute a direct challenge to CERCLA because NPWA seeks to dictate specific remedial actions – the installation of a treatment system on Well NP-21 – which conflict with the EPA's remediation plan, and which the EPA has already expressly rejected in its Record of Decision.

After reviewing the State Complaint, the Court agrees. In ¶¶113-153 of the State Complaint, NPWA reviews the EPA's involvement in North Penn Area 5 and, in ¶¶154-170, NPWA criticizes the EPA's proposed remediation plan. NPWA accuses the EPA of failing to take appropriate and timely action to address the contamination (¶172), asserts that NPWA has incurred costs as a result (¶174), and alleges that Well NP-21 should be put back into service as a source of public water supply with the use of air strippers and other remedial technologies (¶¶175-176). The "wherefore" clauses of Counts II-IV seek a judgment directing Defendants "to abate the contamination and provide an appropriate and acceptable treatment system on Well NP-21, which will put the well back into service as a source of public water supply, including the operation and maintenance of such system." The Court finds that this relief as sought by the NPWA against Defendants is directly contrary to the EPA's decisions, and would, if ordered, require Defendants to ignore or violate those decisions.

NPWA cites to Caldwell Trucking PRP Group v. Caldwell Trucking Co., 154 F.Supp.2d 870, 875 (D. N.J. 2001), in which the district court rejected the defendant's argument that a single reference to CERCLA in one count of the complaint conferred federal jurisdiction over state law claims. NPWA argues that CERCLA and the EPA's involvement with Well NP-21's

remediation likewise exists only "in the background of the State Complaint" and does not create original federal subject matter jurisdiction over the state law claims.  (Plaintiff's Motion to Remand, p. 11).  The claims in Caldwell Trucking, however, did not present a challenge to a CERCLA cleanup, as do the claims before the Court here.

The Third Circuit has not yet had occasion to address state law claims such as those in NPWA's State Complaint in the context of CERCLA, and therefore this Court must decide whether Third Circuit precedent suggests that the Third Circuit would adopt the Ninth Circuit's approach toward such "challenges" to CERCLA cleanups.  The Court must therefore consider the Third Circuit's jurisprudence regarding federal jurisdiction over removed state law claims.

The Supreme Court's decision in Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983), "referred to two situations where federal jurisdiction could be available even though plaintiff based its claims in state court on state law: (1) when 'it appears that some some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims' or (2) when it appears that plaintiffs claim 'is 'really' one of federal law.'" United Jersey Banks v. Parell, 783 F.2d 360, 366 (3d Cir. 1986)(quoting Franchise Tax Bd., 463 U.S. at 13).  The Third Circuit has held that the first of these standards is really a restatement of the well-pleaded complaint test, and has thus concluded that removal of a complaint pleading only state law claims is proper only if the court determines that the state claim "is 'really' one of federal law."  Goepel, 36 F.3d at 310 (quoting Franchise Tax, 463 U.S. at 13).

The Third Circuit has formulated a two-part test for determining when a federal statute "completely preempts" the state cause of action such that the state claim is "really" one of federal

18

law.  In the first part of the test, "we have held that the complete preemption doctrine applies

only if the statute relied upon by the defendant as preemptive contains civil enforcement

provisions within the scope of which the plaintiff's state claims falls."  Goepel, 36 F.3d at 311

(quotations and citations omitted).  Here, CERCLA and RCRA "certainly provide for private

causes of action, [although] those causes of action are limited to recovery of response costs under

CERCLA and to enforce compliance under RCRA."  Polcha v. AT&T Nassau Metals Corp., 837

F.Supp. 94, 96 (M.D. Pa. 1993).  In cases such as Polcha, therefore, where the state claims at

issue sought damages for personal injuries not covered by CERCLA or RCRA, the court

concluded that "there is no substantial federal issue raised within plaintiff's state-law-based

cause of action sufficient to warrant original jurisdiction in a federal district court."  Id. at 97.

Here, however, Plaintiff's state law claims request both response costs and that this Court

order Defendants to establish and maintain "an appropriate and acceptable treatment system on

Well NP-21," claims which clearly involve the federal interests in clean-up that Congress

intended to address in CERCLA and RCRA.  U.S. v. Rohm and Hass Co., 2 F.3d 1265, 1269 (3d

Cir. 1993)("CERCLA's primary purpose is remedial: to clean up hazardous waste sites.").

Therefore, the federal statutes relied upon by Defendants as the basis for removal contain civil

enforcement provisions within which NPWA's state claims fall.  Indeed, NPWA's Federal

Complaint sets forth claims under those provisions.

For the second part of the "complete preemption" test, the Third Circuit has "identified a

second prerequisite for the application of the complete preemption doctrine: a clear indication of

a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state

law."  Goepel, 36 F.3d at 311 (quotations and citations omitted).  As discussed above, §113(b) of

CERCLA confers upon district courts "exclusive original jurisdiction over all controversies arising under [CERCLA]," 42 U.S.C. §9613(b), and the Ninth Circuit has interpreted §113(b) in conjunction with §113(h) – which precludes federal court jurisdiction during the pendency of a cleanup under CERCLA – as expressing Congress' intent to preclude both federal and state court jurisdiction over "challenges" to CERCLA cleanups "because only federal courts shall have jurisdiction to adjudicate a 'challenge' to a CERCLA cleanup in the first place." Fort Ord, 189 F.3d at 832.  This Court finds persuasive the Ninth Circuit's reasoning that, because "Congress enacted §113(h) in order to promote the swift execution of CERCLA cleanups," Congressional intent "is best effectuated by reading §113(b)'s exclusive jurisdiction provision to cover any 'challenge' to a CERCLA cleanup." Fort Ord, 189 F.3d at 832.  So, while Congress did not intend CERCLA to preempt state law claims unrelated to the goals and purposes of CERCLA, Congress did intend to preempt state law claims in conflict with these goals.  The second part of the "complete preemption" test is therefore met since Plaintiff's state law claims involve a direct challenge to a CERCLA cleanup.[4]

---

[4]Similarly, in a case involving state common law claims for contribution and restitution for environmental cleanup liability, the Third Circuit found that there was an "actual conflict" between CERCLA's settlement scheme and plaintiff's common law claims, and that the claims were therefore preempted by CERCLA §113(f), which allows private parties who have incurred "response costs" for environmental cleanup to seek contribution from any person who is liable or potentially liable for depositing the hazardous wastes.  In re Reading Company, 115 F.3d 1111, 1117 (3d Cir. 1997).  Unlike cases such as Witco Corp., 38 F.3d at 688-90, where no conflict was found between CERCLA's statute of limitations for contribution and Delaware state law limiting the time period for claims against a decedent's estate, and Manor Care, 950 F.2d at 127, where no conflict was found between CERCLA and the cost recovery provisions of the New Jersey Spill Compensation and Control Act, the Third Circuit held in In re Reading that under the facts of that case "[p]ermitting independent common law remedies would create a path around the statutory settlement scheme, raising an obstacle to the intent of Congress," and the state law claims were therefore preempted by CERCLA.  In re Reading Company, 115 F.3d at 1117.

The Ninth Circuit has found that state law actions "challenge" CERCLA cleanups where, as here, "the plaintiff seeks to dictate specific remedial actions" and to "alter the method and order of cleanup." ARCO, 213 F.3d at 1115.  This Court finds that NPWA's claims requesting that this Court require Defendants to install a treatment system on Well NP-21 seek to dictate remedial actions and to alter the method of cleanup, and thus these claims constitute a controversy arising under CERCLA pursuant to §113(b), regardless of the fact that they are pleaded in the State Complaint as state law claims.  The removal of this action was therefore proper, and Plaintiff's motion to remand will be denied.

**VI.**   **Conclusion**

For the foregoing reasons, the Court finds that the removal of this action was not procedurally defective, because although Defendant Baron-Blakeslee did not join in the Notice of Removal, Baron-Blakeslee is a nominal party to the action.  The Court also finds that the district court properly exercises subject matter jurisdiction over this action because the State Complaint presents a question of federal law.  The Court finds that NPWA's claims under the HSCA, the Storage Tank Act, and the Clean Streams Law, requesting that the Court order Defendants to provide a "an appropriate and acceptable treatment system on Well NP-21" constitute a "challenge" to the CERCLA cleanup, over which this Court has original jurisdiction under CERCLA §113(b).  Accordingly, plaintiff's motion to remand is denied.

Having found that NPWA's claims under the HSCA, the Storage Tank Act, and the Clean Streams Law, present a CERCLA "challenge" under §113(b), the Court properly exercises supplemental jurisdiction over NPWA's other state law claims.  28 U.S.C. §1367.

As the allegations and claims in this action are identical to those set forth in the Federal Complaint, Defendants' Motion to Consolidate will be granted, and this action will be consolidated for all purposes with Civil Action No. 04-4446.  Defendants' Motions to Dismiss both the State Complaint and the Federal Complaint will therefore be addressed together in a subsequent memorandum and order.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORTH PENN WATER AUTHORITY     :     CIVIL ACTION

                               :

            v.                    :

                               :

BAE SYSTEMS, et al.                 :      No.     04-5030

## ORDER

AND NOW this 25th day of May, 2005 upon consideration of Plaintiff's Motion to Remand (Docket No. 4), and the responses thereto, it is ORDERED that the motion is DENIED.

It is ORDERED that Defendants' Motion to Consolidate is GRANTED and the present action is hereby consolidated for all purposes with the separately filed action captioned North Penn Water Authority v. BAE Systems et al., Civil Action No. 2:04-CV-04446-MMB, and all further pleadings, documents and other materials relating to these consolidated actions shall hereafter bear only the caption and docket number of North Penn Water Authority v. BAE Systems et al., Civil Action No. 2:04-CV-04446-MMB.  The Clerk shall mark Civil Action 04-5030 closed.

### BY THE COURT:

    /s/ Micheal M. Baylson_____

**Michael M. Baylson, U.S.D.J.**

A:\North Penn Motions to Remand, Dismiss, and Consolidate.wpd